Good morning everyone, you may be seated before we call this first case, or this only case. Today we're going to run a ballot. Alright, so what I'd like to do is have the lawyers that are going to argue step up to the podium, identify yourselves for the record. Each side's going to get about 15 minutes. Now, I understand that, well, who's going to argue? Please step up and identify yourselves for the record. Good morning, Your Honor. James Smith for the affiliate. Mr. Smith. Good morning, Your Honor. David Lieberman.  Okay. Mr. Lieberman, good morning. Steven Messner, MESS and YAC. I represent James Stauffer as an executor. I represent, I'm sorry, James Stauffer as an individualist part of the trust, and the third party defendant. Alright, so, I thought that somebody notified the clerk's office, the other chairs, that they wanted to speak today. Is that incorrect? Audrey Mentz on behalf of Ronald McDonald House Charities. I filed that out of abundance of caution in case Your Honor had any questions for me specifically, but we filed a joint brief with Mr. Lieberman, and he'll be arguing on behalf of all of the charities, even though he only represents four. And what is your name again? Audrey Mentz. Mentz? M-E-N-T-Z. Okay, so, alright, so then let's see. So now we have Mr. Messner and Mr. Lieberman. So we'll give you each about ten minutes. One minute? One minute. Alright, and Mr. Smith, you can have the same amount as both of them, or maybe 15 minutes, alright? So, now while I have you standing, I want to let you all know that we're not going to talk about jurisdiction this morning, okay? We're not going to, so I don't want you to have to worry about addressing that at all. I do want you to know that everything you say is recorded, alright? Every single argument that we have is recorded. You're all officers of this court, and I want to remind you of that. You are actually under oath, okay? So keep that in mind. I have a lot of questions. I'm sure my colleagues do as well, but I'm just letting you know everything you say is recorded. But unlike the bystander's report, it is the record here that the judge who heard this case prepared. Alright? So, just keeping that in mind for all of you. So, with that, who's going first? The charity or you, Mr. Messner? I'll defer to Lieberman. No, no. You're the attorney. You're the attorney. You're my support partner. You can go first. Pardon me? I'm assuring you to go first. Alright. You may be seated. Mr. Messner, you may be seated. And I guess I want to ask everybody about this. So I'll do this to Lieberman. You're not questioning the fact that you received an e-mail, are you, about the case being settled and that you'd all show up on Monday? Yes, I absolutely received the e-mail. Alright. And you're not disputing that you all showed up on Monday with knowledge that this was a case that was going to be settled? That is true. I will say, I don't want to speak for Mr. Messner. No, and I'm not asking him. Okay. Alright. You have two complaints. One is that you asked that the judge not look at an e-mail. And two, you also said you didn't want the dismissal to be with prejudice. You wanted it to be without prejudice. Correct. And here, on appeal, you're arguing that there should have been an evidentiary hearing. Is that really primarily your argument? Correct. Alright. So how do you explain waiver for maternity? That we objected to the dismissal with prejudice at the time. Okay. So what exactly were you trying to achieve? And what do you think a dismissal without prejudice would have done to this case? Well, Your Honor, there's uncertainty, I submit. And I'm going to try to be careful in my remarks to stick with what's in the record in the bystanders report and my own recollection. But there is uncertainty in the record about exactly what the settlement terms were or, indeed, even whether there was formation of a settlement agreement. Okay. And so when you say there's a question about the settlement terms. Alright. So here we go. True or false? Did you stand up in front of the judge and explain that the reason that you wanted it to be without prejudice is because you thought that there were questions about the material terms of the settlement? Judge, I will tell you, that's my record. That's not part of the record. That's my recollection. Okay. We can't do that. We just can't. We can't do these things. We have a record. The bystanders report states that you asked that the dismissal be without prejudice. Correct. Okay. Are you going to tell us now that you said to the judge at that hearing that material terms were not set? Correct. That is true. Okay. And specifically... And what were these material terms? Because you didn't put that in your brief. Right. Because it wasn't in the bystanders report. Right. What we said was that what was contemplated in the email was preparation of a settlement agreement to be executed containing all material terms. Sure. I will note that the judgment order says, and this was drafted by Mr. Frake's counsel, it references the email and says that the email contains some of the settlement terms. And the specific concern we had was disposition of our counterclaims against Mr. Frake and how that would be handled. Okay. But what were the material terms that you're talking about? Because they're not in your brief. And I don't think that the bystanders report suggests what you told the judge about why you wanted it to be without prejudice. Without prejudice because there was uncertainty because there wasn't yet... No, the counterclaims were all dismissed. So what is it that you're saying were these material terms vis-a-vis the charities that aren't in this email? Well, again, that dismissal was with prejudice. And that was the dismissal of the counterclaims that Your Honor is referencing. Well, they were dismissed. They were all dismissed. Correct. All right. So is that something good for you or something bad? Well, if everything was resolved, it would have been good. Why would you go forward with a settlement if you did not have the terms in the settlement agreement? Why would you go in the court and tell the judge that you can retain jurisdiction to enforce this settlement if, in fact, you did not have a settlement? Why would you do that? I don't understand that. To be clear, Your Honor, we did not ask the court to retain jurisdiction. The court put that in the order at another party's request. Why would you go... It's set for trial. Everybody's got their witnesses. I assume you called out your witnesses. Everybody goes home. Why would you agree to this? What we agreed to... Let me back up a second. So if you got your way and he dismissed without prejudice, then if you didn't get the exact terms, he had blocked our time in his trial schedule and you would just come in and vacate that dismissal? Was that your game plan here? No, Your Honor. Explain this one to me because I'm befuddled by this one. The understanding walking into the courtroom that day was that the principal parties to the settlement, that is the fiduciary, Mr. Stouffer, and Mr. Frake, the petitioner, and we would memorialize an understanding in a settlement agreement in a written, executed settlement document. That was what we thought would happen as a precondition to dismissal with prejudice and to, in fact, what's recited in the email is the payment obligation. But did you ask to continue it for two days to get those settlement terms laid out? Did you ask to do that? We did ask for more time. Isn't it true, sir, that an oral contract is just as binding as a written contract? An oral contract, I don't know about you, but certainly an oral contract is binding. And you'll have to enlighten me. I've never heard of a dismissal without prejudice. That's usually reserved for repeating. Like if I'm going to dismiss your complaint, I'm going to give you an opportunity to repeat. That would be a dismissal without prejudice. But enlighten me why you think when there's an agreed upon settlement, an offer, an acceptance, consideration, that it could be without prejudice. Well, in fact, this court, in one of the cases cited in Mr. Frake's brief that we talked about in the reply, did exactly that. I'm looking for the name, if you'll give me a moment, Your Honor. Steiner v. Eckert, 2013, Hill App, 2nd, 121-290. Involved us that day. Dismissal based on a settlement agreement without prejudice, and then it would become... Was that the case where the court was involved in the settlement? I don't believe so, no. It was an agreed order. The case where the court was involved was the... Janssen? I think that's the... The state of rights. You know, you still haven't answered my question. What are these terms that you're talking about? Is it because there wasn't an agreement between the almost 70% that was left for the charities and Mr. Stauffer? I mean, they're not in your brief. You need to tell us what these terms are, and so you just had it, and they're not in your brief. That was, in fact, one of the issues under discussion on the Wednesday before the trial and on the day of the trial. What was, precisely, what was one of the points of discussion? How the 71% was going to be divided up? That was one of the issues, yes. Whether that would be covered in this agreement or not was a matter to be determined if it could be folded into this or not. But either way, the settlement that was proposed in the e-mail was short of 30% for the, like, the rest of us. Still in the trust in this case. Pardon me? Still in the trust in this case. So are you really telling us that this case was set for trial? It was a case that was three years old, and Judge Malone had all of you coming to court, set aside two weeks, two weeks for a trial. And you're saying that, did you step up and say, I'm not ready? No, I certainly didn't. Did you say that the charities are objecting to this dismissal, that there isn't a settlement, Judge? Did you ever say that? I may. What we did say, we objected to the tenure of the e-mail. Oh, yeah. What was that? What was the basis of that? That was on the ground because we said if there is not a settlement documented and executed, this court will be finder of fact. I'm not sure you're going anywhere with that. This judge didn't participate in the settlement. Here's a problem I think you have. And, you know, there's a lawyer that's not here who withdrew. And she's the one that sent this e-mail out. And this is what it says. This e-mail confirms a settlement between the plaintiff and the defendant, which was reached today, and which I have confirmed with counsel for Jim Stauffer individually. And at that time, Ms. Howe was representing Stauffer in his capacity as executor and trustee. But here's the other part, Mr. Lieberman, that's about you. As well as David Lieberman, counsel for four of the five charity beneficiaries as follows. Okay? So are you going to tell us now that there's something untoward in this e-mail? Did this lawyer tell the judge and says to everybody, including you, if any of the parties believe that any of the involved does not comport with the terms that were agreed, please let me know immediately. And then she says, additionally, I propose that all the parties will appear on Monday so as to put the terms of the agreement on the record. What are you saying to her statement that was later forwarded to the judge that she confirmed with you, you, Mr. Lieberman? What do you want to say about this? What I will say is that what Ms. Howe wrote was, I'm sorry, I'm doing that. It says in the last bullet point that the payment to plaintiffs shall be made by the executive trustee upon the execution of a settlement agreement. Those are just additional acts in furtherance of the settlement. It's not an element of a contract. Those are acts in furtherance, correct? I respectfully disagree with that. No, I disagree. What that indicates is that this is not a final statement of a settlement agreement. Okay. That's why the judge would reserve jurisdiction to enforce the terms, correct? To make sure everybody signed off on their releases, et cetera, correct? I don't agree with that judge. I believe the judge retained jurisdiction to enforce the settlement, to enforce the terms as a court deemed the terms of the settlement to be. They scratched out the word on the order, didn't they, about settlement or agreement? Are you going to respond to this? I mean, she says she conferred and confirmed with you that these were the terms. It's 29% of the total gross value that was going to go to Mr. Freight, or Freighty. I don't know how you pronounce it. And if any of you have a problem, let me know. Instead, nobody does anything. You all go to court. The judge is notified there's a settlement. And, I mean, I don't understand, and I guess I'm going back to what Justice Burke said. How could you all stand there and act like there was a settlement and then have your clients? I mean, I don't understand. This is not the kind of thing that happened. We've all been trial judges. We know what it means when we set a case for trial. And we know what it means when we get a notification, hey, judge, everything's been settled. So either there's something wrong with these. I mean, I don't understand. I mean, how could you stand there and say nothing? I don't agree. I mean, how could you stand there and say nothing? I mean, this Vice Candidate's report apparently was prepared because the lawyers couldn't come up with something that the judge thought was accurate. He says that in the Vice Candidate's report. And he swears what he prepared for this court under penalty of perjury. So I don't see how this whole idea that there was no settlement, that everyone would stand there, mute, and not say, judge, we don't agree. There's no settlement. We don't have the terms. We want an evidentiary hearing. Let's get to that. Did you ever ask for an evidentiary hearing? No, we did not ask for an evidentiary hearing. All right, so let's go back to that one. Let's clear that one out of the way. You did not ask for an evidentiary hearing? No. All right, but you're asking for one now. Correct. Okay. All right, what case would you cite that allows you to raise an argument for the first time on appeal that you didn't raise through the trial judge? May I respond to the prior point and then answer that? Sure, sure. Your Honor suggested that we stood there mute, and again, as the dismissal order reflects, we did assert two objections. Yes. And, in fact, that ties to my response to your next question, which was that objection was to the dismissal with prejudice based on what we contended was an uncertain, incomplete agreement in principle. That was why we objected to dismissal with prejudice. Have you ever had a case? Has that happened where a judge is blocked out two weeks for trial, you tell them it's settled, and the judge is willing to dismiss without prejudice? I've never seen that. Why would a judge do that if they had blocked out two weeks on a busy trial schedule? There's no judge that would do that. I don't understand why you had that expectation. So I keep asking the same question. I'm sorry, Mr. Lieberman, but maybe you could clear that up for me. The expectation was that that day the parties would prepare and execute a written settlement. So, and again, the material terms that you're saying weren't agreed to, the only one that I've seen is the appraisal, and you agreed that the judge would point to the appraiser if he couldn't agree on one. What are the material terms that you're saying weren't there? I don't know what material terms Mr. Stouffer, either in his individual or fiduciary capacities, would want to include, but I do know that his counsel wrote that there would be a written settlement agreement, and as the Justice alluded, there was the issue of what would happen with the balance of the trust and the state. Right, but all the charges, actually all the issues in the complaint that the plaintiff had alleged, those were dismissed against your client, against the other client. But you still haven't told us what is this material term that you're looking for that was missing? All of the particular one, all of the matters about the appraisal. So that's addressed, though. Why did you show up? Why did you agree to an order selecting an appraisal? Why didn't you get ratification? Why aren't you stopped? There was an agreed order entered December 7th. There were multiple days where you could have gone in and said, Judge, we're asking you to vacate this. There really is no settlement. Why did we not ask the court to vacate it? Why did you agree to an appraiser? How does that impact anything here? Everyone agrees there was an agreed to order entered in front of the same judge. I don't know whether that has any impact on anything. Well, isn't it a ratification act? A ratification of the contract? That you all appeared to have entered in an agreed to order. Because that was a material term. How the property, the real estate, was going to be appraised, that was a material term of the contract. I would review it as a second agreement that was ancillary to this, but I don't know that that makes a difference. And that gives us 71%. Was there ever any litigation between the charities and Mr. Stouffer that was contrary? I mean, is there a claim or a counterclaim between those parties, between the defendants here? Because I didn't see that. All claims and counterclaims and complaints are between Mr. Frick and all of the defendants, correct? The charities have separate claims against Mr. Frick. So that wouldn't be something that would be included, because you're not settling a claim or a counterclaim between the charities and Mr. Stouffer. But there was a trust contest and a will contest, so there was a... And Ms. Howe was the attorney for the trust. She was the attorney at the time for the trustee and executor. And all of the litigation, everything containing the proceedings that framed this case, was between Mr. Frick and the trust and the will, correct? So she had the authority to go ahead and enter into those settlement negotiations and achieve a settlement. Because the only litigation that's before us, she has power over for the defendants. I disagree with you, Your Honor. The charities were all named parties in all the claims. They had their own counterclaims. I can't remember all the things, but the charities... The charities were going to take, like, 50% under somebody's multiple wills, weren't they? Under the will that was in an abstent at the time of Mr. Frick, Alan Frick, the father's death, he left 50% to the charities. Okay. So there's more than 50% left under this settlement, isn't there? There's, like, 70% left, right? And originally, Mr. Stauffer was going to get, like, $100,000. There were multiple wills, right? There were multiple wills being prepared, right? Yes, and more trust instruments than wills, but yes. And so how could you not, based on what you're doing today, how could you stand by and let the court enter an order dismissing the case when you say there's material terms that are missing? How could you let this go? How could you not say, Judge, this is not what we agreed to? When Ms. House said this, she was wrong. I didn't talk to her. There weren't discussions. And if you didn't do it the first day, why didn't you do it the next week? Why didn't you do it the week after? And then why didn't you do it when you were all ordered to come up with an appraiser and there was an agreed order entered that said the parties had selected Mr. Richter? I think it was. I don't know. Again, Your Honor, I certainly don't, just to be clear, I don't contest that I spoke with Ms. Howe on that day that was referenced in her e-mail. Okay. But, again, I think it's not quite right to say that we stood by and let the order be entered because we had a very specific objection. Okay, but without prejudice, I really don't see what difference it would make. What difference would that make? It would mean that if Mr. Stouffer and Mr. Frake would not reach agreement on a written, executed settlement agreement on all terms, then... All what terms? They have to be material, and we're yet to hear this morning one word from you about what was material. Did it have to be in writing? No, that's not going to work. What is the material term that's missing from this e-mail? We need to know. How and when the payment would be made? I thought there was a provision, and there was actually, let's see. It says, 12-1 cash on hand will not be reduced by attorney's fees. 12-1 cash on hand will not be subject to prepaid expenses or any prepaid billing. Parties tend to agree on an appraiser payment. Claims shall be made by the executive trustee in cash upon the execution of a settlement agreement. Executions with claims and from plaintiffs so as to release. And then there was an actual statement prepared that actually indicated what the cash on hand was. Was it there? I believe so, yes. Okay. So, I still don't, I'm not, I'm sure, I just don't understand what was material. What I don't really understand is how Jeff Malone would let any of you out the door if there was any question about a settlement. He had two weeks to play with, two weeks. And he says in his report that you all assured him that there was a settlement. Do you remember that in the bystander's report? Yes, sir. The court was persuaded by all parties present on November 29, 2021, that they had reached a settlement agreement. Otherwise, a trial would have commenced. The only objection raised in the order was whether the dismissal would be with or without prices. And there was an objection made about the settlement agreements. There was no objection, rather. That's what Judge Malone has certified under the penalties of perjury. Are we going to ignore that he certified this under the penalties of perjury? That he was convinced that all of you came into court and you indicated there was a settlement. You know, trials scare a lot of people. But not enough to say, Judge, we don't have an agreement. So I don't know what you're expecting us to do here when we have a bystander's report that was certified by the trial judge. Like I said, there's three judges sitting up here who have all sat in courtrooms. And we know what it's like when a trial date is set. Okay? Most of the time, cases settle. The vast majority of cases, it settles right before trial. That's a fact. And if there was any question here, I don't know if we can understand how Judge Malone would prepare this and say he wasn't going to let everybody out the door when he set aside two weeks for a trial and nobody complained. And then weeks go by. There's an agreement that has to take place in furtherance to ratify the fact that there was a contract. Like providing the balances of the cash, the CDs, etc. How is that material for your client? Hold on. The cash on hand or whatever, how is that material to your clients when the agreement was that Mr. Frank was getting 29% of the value of the real estate and the cash on hand as of a certain date? And then I believe there was a, somewhere in the record, an indication of how that was the amount. So how does that impact or in any way materially affect the charities? It affects the charities because it reduces the trust corpus, but I don't dispute that that term was reviewed with us and we didn't. Okay. Everything's frozen as of 12-1-2021. Isn't that what this email says? Everything is frozen 12-1-2021. Will not be reduced, the cash in particular, because they have not yet done the appraisals. But there was also action for ratifying the contract to allow the appraiser in the building and all of those things. Mr. Stouffer was present. The 12-1 date was the date on which there was a snapshot of the cash balance and the real estate value. Right. That's what you mean by frozen because that's a snapshot as of that date. That was agreed upon. Yes. That it would be 12-1-2021. Yes, ma'am. Okay. Again, just to Your Honor's point, Justice McBride, about there would be payment as of a certain date. I respectfully submit that that's not what the email says. It says payment as of a specific event, and that event is the event that didn't occur, and that's the execution of a written settlement. Oh, yes. Those are always done after the settlement is achieved. I mean, it happens every day in the law division at the Daly Center. You achieve a settlement, right, usually on the courthouse tax, like Justice McBride has described, right before the trial, and then the attorneys go back to their offices, and they prepare the documents, and further, it does that settlement that has to be signed and so forth before the person gets the money. That happens every day. But there's a settlement. You can't deny that there's a settlement. What? And the court doesn't care. The court dismisses the case right away. And if somebody doesn't deliver on the settlement, that's why the court reserves jurisdiction to enforce. And then you come back and say, so-and-so has given me the money. I gave him my release. But so, you know, defendant has tendered their check. Judge, I need you to enforce it, enforce the settlement. But it doesn't negate the settlement. It doesn't negate the settlement. That is not what happens in the Steiner case. Again, the settlement was without prejudice until a certain event. And that was what we understood would be the process here. And that is the basis for the objection that we did assert to Judge Malone, and he overruled it. Well, you're not even actually asking to vacate the settlement, are you? The settlement, Your Honor, is not made a part of the judgment. The judgment just dismisses the prejudice. You're asking for an evidentiary hearing, right? Correct. Okay. I mean, you didn't ask in your brief that you never entered into a settlement. You just had an objection that it was issued without prejudice, and that you didn't want the judge to see the e-mail. I'm not sure why, but whatever. So, but you're not even asking that the settlement wasn't in place. You're just saying the judge should have held an evidentiary hearing, right? I believe I'm— This is really a forfeited issue here, because you didn't raise it in front of the judge. You didn't ask for an evidentiary hearing, right? You already said that today. Right. Asked for a dismissal without prejudice. Right. But you never asked for an evidentiary hearing. Correct. Okay. So, where are you in this whole thing here today? What is it that you want? You want an evidentiary hearing that you never asked for, and under the case that you're not entitled to because you forfeited this very issue before the court. So, what is it that you want? You want it to go back and have the dismissal entered without prejudice, or you want this evidentiary hearing? The relief or request is a what? It is they take the order and— The order with prejudice, right? Correct. I would submit that on the record on appeal, this court is without sufficient record to make a determination whether there was or was not a valid enforceable binding settlement agreement. And that's an evidentiary matter that requires evidence, and that's what the Janssen case and the other ones we cite hold. The Janssen case is the one where the judge actually participated in it, isn't he? You may be correct. I know that is a fact in the other case I referenced. You know what? We're going to give you some time to respond. All right. We'll give you more time after we hear from Mr. Stauffer's attorney, then we'll go over to Mr. Smith. All right? Appreciate your time, then. All right. Consideration, Justice. Mr. Messner, the podium is all yours. Good morning, Your Honors. Good morning. I prepared a response, what I missed in between the lines in the brief, to address the court. If the court wants to ask me questions now, they will probably be the same ones that I addressed myself. Well, you're not suggesting, are you, that you didn't get the e-mail? You're more like saying your office was closed over the Thanksgiving weekend or something? No. What I'm suggesting is Jennifer Howell, who represented the trustee of the Ellen B. Frank Trust, sent an e-mail out late in the afternoon on Wednesday. We were set for the trial on Monday at 4.09 or 4.10. I was not in my office. We left for the early Thanksgiving holiday. I did not return until I appeared in court on Monday morning, prepared with my client, Mr. Stauffer, for his 1102 examination, which was set for that day. That was the only – Are you saying she didn't call you because her e-mail said she spoke to you? She did. And that you approved, is that right? No. What happened was she had called me either that morning or the prior day and said, I was in discussions with the plaintiff about a percentage. And I said, a percentage of what? She says, I'm not sure we've figured out the basis to apply the percentage. Would 29% be okay? I said, yes, if we know what the basis that that 29% is going to apply to. So I never saw this e-mail. I never saw the e-mail where counsel sent to the judge on Sunday saying the case is settled. Never saw that e-mail, and it's not addressed to me. I never saw the e-mail that the judge sent back on Sunday afternoon saying, fine, I'll meet you in court on Monday to discuss. Never saw those e-mails. I never had a discussion with Jennifer Howe on the terms of this agreement. So now you're going to go off the paper that says 29% of the gross value, the phrase value, the real estate and the cash on hand in both the trust and the state as of 12-1-2021 will be paid to plaintiffs in full settlement of all claims against the defendants via state and or the trust and in exchange for mutual releases as between the plaintiffs and defendants. That is correct, Judge. I never saw that e-mail. No, no, I didn't ask you to. Oh, I'm sorry. I never agreed to that. How is it that Judge Malone didn't make you go to trial? I have no idea. I was there with my client for his 1102 exam. He was ready to go forward with it. I know there was boxes in the courtroom ready for trial. I certainly was prepared. Okay, well then, when did you first look at this result? Monday morning. Okay, Monday morning. What does it say? Well, I'm going to hand it to you. I do not believe that any of the above cases does not comport with the terms that were agreed. Please let me know immediately. The first time I saw that e-mail was when Mr. Smith approached the bench and said, Judge, this case is settled. I had the e-mail. First time I ever heard of the e-mail. Never heard of it before. Did you say, Judge, we're ready for trial? We do not agree. Did I say that? No, I did not. I did not. Did you tell the judge there is no settlement? Well, did you tell him I had it in the e-mail, the terms, the textbook, the terms? I said to the court, I'm trying to remember. We'll go back here in a minute. I said to the court, I never saw the e-mail that was put on your desk, and I'm going to object to the e-mail. Okay, well, that's not the bystanders report. No, I understand. The bystanders report does reflect, though, that Mr. Lieberman objected, but there's nothing in there about you objecting to the e-mail. I never sent it to any e-mail. I never sent it to any settlement. Okay, well, how did Judge Malone, who had set aside two weeks for this trial. I don't know, Judge. I really don't know.  So are you telling us today that you were in the courtroom when all the other parties said the case is settled, you said it's not settled? No, I did not say that. Okay, so you were there when presumably Mr. Smith said the case is settled, and you said nothing. To the court. And Judge Malone said, I am going to dismiss this with prejudice, and you said nothing. That's correct, Judge. Okay, all right. So I don't know what wells you have to say here today. My clients. Remember, I said everything's reported. Yes, I understand that. Your officers in court, you're telling us now that you never objected, you never said that there isn't a settlement, you didn't say, I'm ready for a trial. Your client, Mr. Stalker, was there, and you're telling us that somehow we should undo this? I am saying that we never accepted. And I understand where the court's coming from. We never accepted to the terms of the unagreement that we never saw. Furthermore. Then why didn't you object? Why didn't you come in the next day? Why didn't you come in the next week? Why didn't you agree to an appraiser? Why didn't you do anything? Move to vacate the settlement because your client, Mr. Stalker, who was sitting in the courtroom, did you remember reading that Szymanski case? An old settlement case. And he goes with the judge. I think the judge had settled more cases than anybody else. The plaintiff is out on the stand, and the judge is saying something about, you know, is there any chance of settling this case? You know, I mean, I feel like saying that right now. Twenty-nine percent is going to the plaintiff. Seventy percent of this pot is left. Okay. So, you didn't object. You didn't say anything. And Judge Malone had set aside two weeks. And you did nothing. And then you agreed to pitching the appraiser. There's an agreed order. What kind of, what kind of, what do you expect this court to assume when a lawyer comes in, and says we have a settlement, and then everybody else, all the defendants are objecting, and they don't say a word? May I address that, Judge, please? Please, you may. When we appeared that day on Monday, and I'm going to where you want me to. My client and I and everybody stepped out of the courtroom because the judge wanted to know what our thoughts were. I told Mr. Smith. I told Jennifer Howe. We're not taking this. Nobody assented to it by any of the defendants that I represent. Ms. Selby never got noticed. I never got noticed. Mr. Stauffer never got noticed as executor. Ms. Selby was really kind of a non-issue, isn't she? She was. She was an executor. But the executor might have helped. The plaintiff joined her as a defendant. You know what? You went off the track. My clients never received any kind of document to discuss the terms of the settlement. Much less had they ever been discussed with Jennifer Howe. Jennifer Howe never talked to Mr. Stauffer about the terms of this email. Well, okay. She never did. This says that she talked to you. My telephone call with respect to the .29 was granted bail of number. And I said it depends how you apply the .29 because I still have the cherries to worry about and how it's going to be divvied up at the end. In many of these iterations, they were going to get 50% of remainder. Weren't they? No, we weren't. Either way, 29% for the plaintiff. The plaintiff is the person that, you know, sued here. Then you've got the defendant. 70% left. 71% of this pot. And you're telling us that you didn't agree to this, but you didn't say a word to the judge. Not that day. Not the next day. Not the next week. You even went as far as to have an agreed-on or entered accepting an appraiser. The only response I can give you is you're correct. However, when after the November 29th date, Ms. Howe sat down with, I believe, David, not me, to discuss what we're going to do. And I said, well, I have three lawyers here. We have to figure this out because my clients never at all even saw the settlement. Never discussed the settlement. And I've got to discuss it with you now. We're going to go forward. Ms. Howe decided that there was some ambiguity in the formation of this alleged settlement agreement. And she had an issue with Mr. Stauffer because he didn't agree and was giving her a difficult time saying, I didn't agree to this. That is why they went ahead and let the appraisal be chosen and the alternative. I didn't even know what number to use for the valuation of the property. Now, the property... Well, the appraiser was going to determine that. But there was an issue with the... And the appraiser. But what I didn't... I never agreed to this. I know it's ridiculous to have to settle for it. I understand that. But what I didn't see were any escape clauses from their appraisal. If one of the parties thought it was not benefit... They were going to support these changes. No, so that they... They were outnamed. No, so that they could take the alternative and say, we're not buying this property. We want to be bought out of the property. That release, that clause, would have been part of the agreement. And I drafted it because I didn't know what the appraisal would show. Well, that's true of a million settlements. It happened every day. Every day. It was never at the daily center. Yes. But it was never... In all kinds of cases. But in all kinds of cases, divorce cases, we set forth that it'll be an appraised value. And that's what it's going to be. And then the question is, who will be the appraiser? And in this instance, you guys are going to leave it up to the judge. You couldn't agree. And that was a specific term. You don't get to then go back and say, oh, well, now it's been appraised. No. No. No, Judge. I'm not saying that. I'm saying that if we had an agreement, which I didn't. I don't think we did. I was including, as part of an essential term, that my client has a right after the appraisal to be brought out by a plaintiff. Why didn't you do any of this? I mean, you had... Why didn't you do anything? Why didn't you do anything? After the date, if the judge had set aside two weeks for a case that had been pending for three years, why didn't you come in the next day with this change of heart? Why didn't you come in a week later? If I remember correctly, and again, it was a long time ago, that the lawyers would have different views on what to do at that point in time. But if the view was as far off as it is today, that you never agreed to any of this, then there's only one way to handle that. Not let a judge go through the trouble of having to prepare a bystander's report because he had a record of everything that had occurred in front of him.  He had a bystander's report. He swore to it. And he says that he would never have let this case go if the parties weren't in an agreement. And that's what judges do all the time. They're not going to let you walk out the door after a date. I understand that. But I never assented to the agreement. But you never did anything to show you didn't. I understand where it's coming from. But how do I explain it to my clients? Well, that's the really important thing. That client is sitting out there, and you don't even object. That's the important warning. The same judge will not enter into a settlement. We're not agreeing to this today. We're ready for trial. Our witnesses are subpoenaed, and we're ready to go. My clients never had an opportunity to review any settlement agreement prior to the 29th. Records on appeal are limited. Either we have a transcript, or we have a grave state of facts, or we have a bystander's report. We are bound by the records. I understand. All of you are bound by the records. I understand. Okay, wait. Now, you know, there's a rule here that it has nothing to do with whatever you did there. Okay? But if you didn't ask for an evidentiary hearing, you're not going to get one now because you forfeited that challenge. Okay? I asked Mr. Lieberman, did you ask for an evidentiary hearing? At the appointed time, no. Okay. Well, is it too late then? You have to ask for something. You have to give that judge a chance to make amends. You have to let the judge know, Judge, we made a mistake. We didn't really agree on the settlement. And you know what? Let's have an evidentiary hearing. Do it a week later. Do it two weeks later. Ask to vacate the settlement. But, no, nobody did that. I'm not disputing. Why? I'm not disputing with you. Why didn't you move to vacate that? I guess there was a, for lack of a better word, confusion between what to do now between the lawyers. A client, my client, said, I never agreed with what Jennifer Howe proposed to the court. I never was notified of what Jennifer Howe proposed to the court. I have no idea what she proposed until Mr. Smith walks in with this e-mail on the 29th. I am here. How long have you been presenting law? 47, 46 years. Okay. I got a couple more items. But you know what? I don't know how you can go into court and then you've got, at some point, you have to read this, and then the day of the trial, everybody knows what happens the day of the trial. You either are ready or you've settled. Or you're continuing. And if Mr. Stoffer, or Stoffer, I don't know how to spell it, Stoffer, if Mr. Stoffer had all these objections, why did he then disclose the balances on 12-121 of three different checking accounts, one savings account, a CD, then go to court and agree to a specific real estate appraiser, then give that appraiser access to the property and accompany that appraiser to the site visit? Those are all ratification acts of the contract. My only response to that, Judge, is my client never had any discussions with Jennifer Howell as the beneficiary, the trustee of the trust, as to those terms. I think he was as dumbfounded as I was. Why didn't we do anything the next day? Two days later, three days later, my only answer is confusion as to which path he was taking. That's all. Well, she says she conferred with you. She only got 29%, and I didn't know what the 29% meant. And what is it that you're really all fighting over? 29% goes to the plaintiff. What is it? What is it? Bottom line, Judge, we were all prepared to go to trial. I was all prepared to go to trial. Oh, okay, so there was never any. No, you were never going to go. You were going to go. Our settlement was something that was always discussed at one point in time, but the amounts were always in excess of what we had to agree to do. Okay, so you're saying that you envisaged something larger than the 71% left over for the jury and your client, the next-door neighbor? I envisaged, pardon me? Mr. Stauffer was Mr. Craig's longtime next-door neighbor, right? And then his girlfriend became the alternate executor? It wasn't his girlfriend. Oh, well, whatever. I understand. Lisa's helping. Were they going to get any money? No. It was Mr. Stauffer. Mr. Stauffer was. At one point, he was just going to get $100,000, wasn't he? Yes. It was in the background. That was changed. And the reasons for that change, we don't need to go to in front of the court because it's not in the plans. So I'm not going there. No, no. We have a bystander's report. Actually, it took us six months to get the bystander's report, and I am suggesting to the court. I'm not even suggesting, I'm saying I never accepted. My client never accepted either Jennifer Howe's e-mail or the arrest settlement agreement. So did the judge, he said who was present before him. Yes. He said all parties agreed there was a settlement. That's what he said. That is untrue. Okay. I'm just saying that is untrue. And you may have saw him do it. In other words, if you had said you were ready for trial, he would have, then he would have proceeded, right? I expect so. And you didn't say that. I was following the instructions of Jennifer Howe and David. You never said I was ready for trial. I never said it. All right. Okay. But somehow, and you never really let the judge know you didn't agree, did you? Yes, I did, but not on that date. Not on that date. Okay. We were waiting after one of these litigations. I never agreed to anything with Franklin as to a settlement. Nor did my clients. They had no knowledge. No. But he was in court. I told him he had to be in court. But he was. Yes. Okay. I had the verdict was 11-02, which was supposed to start on that day. He didn't say anything either, did he? Mr. Stocker's been told by the bench not to open his mouth during the last four years because he's a very vocal individual that says what's on his mind. Okay, well. And he just kept quiet. Okay. We'll give you maybe a couple of minutes, but, you know. You're not saying any material terms are missing, are you? Well, material terms, yeah. I don't know what I'm talking about. Well, I mean, you know, you're kind of stuck on your statement. I didn't agree. My clients didn't agree to that. We never agreed to it. Yeah. I never got it. How come when Plankett's counsel sends an e-mail to the court, then it says, I have received it, so I'm prepared for Monday night, how come an e-mail from the court doesn't come to me so I'm prepared for Monday night? It wasn't Plankett's counsel's e-mail. Pardon me? It wasn't Plankett's counsel's e-mail. It was a mentality deal, wasn't it? Plankett's counsel e-mailed the court. Okay, we're not talking about that. We're talking about asking about the material terms of this. Oh, my client never saw me. That was Monday morning when you were here and the trial was set. I never saw you. And you saw it on Monday morning. And it was 25% of the cash. She saw a settlement that was not discussed with me or my client. Do not say no. I did not agree. But you didn't say that to the court. So, that's not the term. Wait. I was prepared.  It was not out of case to put on. It was such a case to put on. I know. But that's not. I'm not. I'm trying to answer your question. Yeah, yeah. No, you did mention that. I didn't agree with it. They were the ones that had 75 witnesses. The judge had already ruled on motions to eliminate. I mean, this was supposed to go. You're right. It actually was supposed to go. And that's why my client was here. Okay. Well, I'll give you a little more. Mr. Smith, you'll let him talk briefly. Thank you. Thank you, Your Honor. James Smith of Appalachian. I was looking at the bystanders' report, and I counted seven lawyers that were there Monday morning. Ms. Howell and I had negotiated the settlement before Thanksgiving, and we were made sure. And Ms. Howell's e-mail reflected that everybody was notified and that if there was going to be an objection, it needed to be made either in the form of an e-mail or on that Monday morning before the judge. I think the panel has focused on the issue or the lack of issues, and what the appellants are requesting is relief for basically sitting on their hands. And I don't think that that should be considered by the court or agreeable to the court.  No, Your Honor. All right. Well, we'll hear from Mr. Lieberman. Mr. Lieberman, do you want to say anything? Sure, please. Your Honor, were you in court that day? I was not. Who was there on behalf of your firm? My assistant. Ms. Gold? Ms. Gold was, yes. She is no longer with the firm. However, she was there that day. And I understand where Your Honor is coming from. I just want to quickly on rebuttal explain the position that the charities were in and why we find ourselves here today. So as the 30-day date was approaching to make that dismissal order final, our plans were dismissed as prejudiced, and we weren't the parties fighting about the settlement agreement. The settlement agreement wasn't, or at least those terms that were in the e-mail, they weren't incorporated in the dismissal order of judgment. There was no written document. And so our concern was we suddenly found ourselves potentially with no claim and no resolution among the other parties. And you brought up the issue earlier about whether or not the appropriate procedures would be to vacate. Could you just explain? You said you found yourselves without any basis for a claim. What do you mean? Apparently the state and the trust was made up of, we'll say several million dollars. I don't know the exact amount. But only 29%, whatever there was, was going to the plaintiff. The rest was really essentially for the defendant. So what do you mean by there was nothing for us? Certainly. So I specifically mean our counterclaims against Mr. Frake. They had been dismissed with prejudice, but there wasn't actually any executed settlement agreement. It didn't look as if one was forthcoming from the parties. We don't have control over that. Everything was dismissed. Everything against your – well, you actually, as Justice Walker pointed out, the counterclaims were vis-à-vis the plaintiff and Saba, right? Our other counterclaims were against Mr. Frake. And what were they in essence? Your Honor, I am not going to be able to get into the detail of the counterclaims because I was not involved in the vast majority of this litigation. I came in in November. Okay. I believe they were part of the case that was originally in the Chancery Court that was eventually consolidated with the Probate Court. But the concern that we had was where was the case going, right? There wasn't any executed document. We had requested that the case not be dismissed with prejudice, specifically because it had been a very contested piece of litigation, as probate cases typically are. What would the without change other than the fact that either way the judge had maintained jurisdiction over this agreement? So what can you imagine that the word without – how would that change anything when the judge had complete control over this case as far as the second? Certainly. The concern that we had that day in court was exactly how this is played out, that we didn't yet have a signed agreement, and without a signed agreement, things might fall apart. And if things fall apart and there is a dismissal with prejudice, what is going to happen to our claims? And I understand, Your Honor, that the court – That's not really answering the question because if things fell apart, the judge would just vacate the dismissal. And I put everybody back to square one. And without prejudice, it really doesn't change anything because in the order, the order where all the claims were dismissed, that the court retains jurisdiction of these matters to enforce the settlement terms. Now, if there were settlement terms earlier, after many promptings, we were yet to hear what the material terms are that were missing. We're not going to get that into me. But when you suggest that without prejudice would have any impact at all, it wouldn't have any because the court retained jurisdiction. And if there was a problem and there was any kind of funny business or anything else that wasn't incorporated in the email, the judge would have seen to it that it would be corrected. Or he would just say, sorry, Mr. Smith, the deal's off. And I'm not going to contest that. I think where we found ourselves, though, 30 days past the entry of that dismissal order, was we weren't sure what was going to happen. And the question was – When you say we weren't sure what was going to happen, as far as what? What? Correct. What? Aren't you just talking about money at the end of the day? Isn't that what this case is about? My goodness, who are we fooling? This is about money. Okay. The Jerrys felt they were entitled to so much. Mr. Stalker felt he was entitled to so much. The plaintiff, the son of the man who died, Mr. Frake, Allen, they, Mr. Frake, the son, he thought he was entitled to so much. We're talking about money here. So how could all of this – I don't understand. If the judge said without prejudice, so what? The judge was retaining jurisdiction. If there's something that somebody's hiding from us, we should know, okay? But the judge gave us a certified bystander's report. We're talking about money here. If there was some dispute about what the charities and Mr. Stalker were supposed to get, the judge could have corrected that. And I understand that, Your Honor. I'm just trying to explain why the charities have done what they have done, and that was specifically because as we got there 30 days out, we had claims that had been dismissed with prejudice. We weren't – we had no control over these other two parties. To make it clear, we're not contesting that the 29% is an amount the charities agree to, to Mr. Frake. We don't contest that. Then what do you contest? We contest specifically the dismissal with prejudice because we wanted a written agreement before the case was dismissed. But if you're agreeing that Mr. Frake, the son, is entitled to the 29%, what are we doing here? The reason we're here, Your Honor – Your claim, anything against you or the clients was dismissed. I understand that. The question that we had 30 days out was do we need to move to vacate the order? What is going to happen with these dismissed claims? Why didn't you then? I guess we'll ask that question again. Yeah, because Mr. Stalker appealed, and so it came up to the appellate court. We thought that this was probably the best avenue for pursuing our rights. Well, you know that the circuit court has jurisdiction for 30 days, and even if he had filed his notice, you could have moved to vacate. The trial judge has 30 days, and if you ask to vacate the judgment, then that appeal of Mr. Stalker's is premature, and it doesn't become effective until the trial judge rules on a motion to vacate a judgment. That is – those are our rules, so we're not talking about losing the court having – this court having jurisdiction and the trial court lacking jurisdiction. No, that doesn't work either. Certainly. In hindsight, in 2020, perhaps the better route would have been to move to vacate. Our assumption was that because Mr. Stalker had filed the notice of appeal that this was the best avenue because the issue would be before the appellate court. So that is why we are here today. I mean, we are trying to protect the charity claims, and we're stuck between two parties. Well, are you going to contest bystander's reports? Are you suggesting that this court doesn't have an accurate record before it? Your Honor, I was not there that day, so I am not going to – But you're representing one of the charities, aren't you, Ronald McDonald? I am. All right. So I guess I'm asking you, you asked to speak, so I'm asking you if you are contesting the bystander's report The statement in the report regarding Mr. Lieberman's objections and how that came about, that was not my understanding of how those objections were made. They also – it doesn't comport with the update I got from my associate that day. My understanding was that Mr. Lieberman very clearly objected to the dismissal with prejudice because there were these outstanding issues. There was a proposal that the dismissal be without prejudice, and that's why that language ended up in the order. But you're also suggesting that a dismissal without prejudice is not a dismissal order. That's strange. I think the concern is – Back to what Justice McFly was saying, what makes this so important to you, a with prejudice or without prejudice? It's a dismissal order, is it not? In the case of dismissal pursuits of settlement. Correct. You agree with the settlement. With respect to the charities, we do not contest that 29%. With respect to Mr. Frake, that portion, we have no basis to contest. And I state that. Mr. Lieberman may have additional comments about the other charities. I have no basis to contest it. I was not part of that negotiation. And as I stand here today, I'm not contesting it. All right. Anything further you want to add? No, Your Honor. I hope the parties understand. We have a bystander's report. And this isn't something we can't take seriously. We're bound by a record on appeal or an agreed statement of facts or a bystander's report that's prepared in every single case. So, if you don't have anything further, you may be seated. Mr. Lieberman, did you want to say anything further? You may. I wasn't trying to cut you off. Did you want to say something further? I don't even think we have even a dispute privately. Anything in the bystander's report? I don't think there's any procedural or legal basis we can assert to dispute it. And we haven't disputed it. I will just say that the bystander's report does reflect the basis why we're here. And that is we objected to dismissal with prejudice. And I'm going to go back to, I'm going to have to ask you again, because I did ask you. If the judge entered the order that you're asking, nothing would be different. The judge has the jurisdiction to retain over this settlement. And if the dismissal was with prejudice, that doesn't change the landscape in any way, shape, or form. Because the order, again, everyone agreed to. The order says that this court retains jurisdiction of these matters to enforce the settlement terms. So if it was without prejudice or with, that doesn't change the fact that if there were some kind of issue here that you brought to the court's attention, that the court could correct it. That's why it retained jurisdiction. And courts always do. I mean, it's very seldom when somebody will walk out the door and not have the court retain jurisdiction because they want the terms enforced. So I don't understand any of that language. There's nothing magical about it. And I don't think it changes any landscape here in terms of, well, something's missing. Well, judge, this is what's missing. I mean, unless you can explain it to me. That is that this was very contentious litigation. And there was a concern that there would be continued controversy between Mr. Stouffer and Mr. Frake about how things would play out with respect to this settlement. And the charities are beneficiaries of that trust and have seen what's happened over however many years of litigation. It was at that point four years, I think. And you didn't think the judge could handle any of this? No, I certainly didn't. That was never my thought, that the judge couldn't handle it. But our thought was that if, first of all, our anticipation walking in was there would be a document that would be more specific, more complete, and signed by everybody, less subject to dispute. And we thought that... We thought over the long Thanksgiving holiday weekend when the plaintiff's counsel and the attorney that had the apparent authority on behalf of the trust and the wills would work to prepare all their releases and so forth over the long holiday weekend when they knew they had a settlement and nobody objected to it? No, we anticipated that would happen Monday morning. Well, that's never been my experience as either a lawyer for 21 years or a judge for almost 15. That's just not how it works. We find common sense. It is what the email did say, that there would be such a document. Somebody would say that the document would be available on Monday, didn't they? No. And you didn't say by return email, is that document going to be ready on Monday? That's true. Anything further you want to add? No, but thank you for the opportunity. Mr. Messersch? Just a few minutes. The first thing was what Justice Walker just said about apparent authority on Jennifer Holland. There's no apparent authority over Stauffer as executor. There's no apparent authority over Stauffer. No, there was actual authority because at the time that the settlement was entered, she was representing Mr. Stauffer. As the executor and the trustee. That's what her actual authority was. But not as executor. No. The only thing that you were, at that point, you were representing him individually. And as executor. No, no, no, no, no, no. That's not... That's not my appearance because I'm filing only appearance. There was such when we filed. But she was trustee. Everything in the record says that she was representing Mr. Stauffer as the executor and the trustee. That's not actually in the record, but okay. Okay. Well, maybe I'm wrong. I understand. The next thing was, one important thing I'm going to suggest in the settlement agreement, and that is the lack of good faith. When I say the lack of good faith on the settlement agreement, where beneficiaries were not notified of the terms intentionally. When I say intentionally, my name, as a man, was never given the emails to the court or the emails from the court on that specific settlement. We didn't know. We were in doubt. We didn't know. You're not meeting the actual settlement proposal. That's not my proposal. I told you this was three days before court, and again, I didn't get it until Monday. Had I received it earlier, there would have been an objection. I mean, there was an objection. I never sent it, but that's not all in the record. But there was no acceptance of that agreement by my client or by me. And the last thing I'm going to suggest, and maybe I'm wrong here, but I'm going to suggest it anyway. In this case that's been going on for three or four years, I would presume, and maybe my presumption is incorrect, that the court would pull either the parties or- You didn't raise that before the judge, did you? You know, that's part of the problem here is that there's a real serious forfeiture issue from you and the charities. You never asked the judge to do any of this. You didn't ask the judge to pull the parties. For all we know, from everything that we've seen, he asked everybody, is this a settlement or not? He said you were all there. So this whole thing about pulling, please. Didn't you raise that in your reply brief? He didn't, pardon me? Didn't you raise that for the first time in your reply brief? That would be incorrect. Yeah, you can't do that either. 341, look at the rule. You can't raise things for the first time in a reply brief. And you didn't ask for an evidentiary hearing, you already told us that. You didn't ask that the judge pull everyone. You can't be asking us to do that. I understand you. And then we have the bystanders. But we still have a good faith argument that we didn't receive anything, that the terms weren't accepted to, and the judge never asked us if we agreed to it. But that's besides the point. I'm just telling you I was there, that's all. But you didn't tell the judge that you didn't agree to it either. I objected to the e-mail. As a judge, there was no agreement based on that e-mail. That's all I said. I didn't say anything else. You said there was no agreement? I didn't say that, Judge. You didn't say that? No, I didn't. Yeah, you did. I couldn't tell you. Well, I'm the assessment court. Okay. What I'm saying is I objected to the e-mail being put into evidence because it wasn't part of the record, and I had not agreed to it. Okay. Well, that's something that the bystanders report is counterintuitive because the judge did say, he did say, that the charities objected to the judge seeing the e-mail. What did you do? You're saying? I objected to the court seeing it. Did you object to the court seeing it? Is your argument the same as Mr. Lieberman's, that we didn't want the judge to see it in case we had to try the case? No. We didn't want there to be violence. No, Judge. No, Judge. He was involved in settlements. He wasn't involved in anything. I objected to seeing it. It wasn't in the record. I had never seen it before. Okay. That time at 10 o'clock in the morning, my client never saw it. My other client never saw it. Was it at 10 or was it at 11? Pardon me? The e-mail said everybody was supposed to be there at 11. Okay. It was 11 o'clock at night. All right. That is what I'm saying. Good faith requires that. I don't know why we didn't send the e-mails. I have no idea. I don't know why we didn't send the court. You mean the one about being settled? Yeah. I don't know why we didn't send the case. You know, apparently everybody else saw it. Well, you were on the e-mail that said there had been a settlement. No, I was on the e-mail from Jennifer Howard. Right. I know. And I never saw the e-mail. I know because you were cooking turkey. We were all cooking turkey. Yes, and I don't know why it was with Jennifer Howard at 10 o'clock. Okay. Well, that's not what the judge said. He said he would never let anybody out of the courtroom if there wasn't a settlement, and that's what judges do. But, anyway, this e-mail, which was sent to you, okay, legalized. Yes, sir. This e-mail confirms the settlement between the plaintiff and the defense, which was reached today, in which I have conferred with counsel for Jim Stoffer, individually, to L. David Lieberman. So I know you already said that you talked about the 29%. Yes, sir. Okay. So. It was not discussed with any of my clients. All right. Well, this case is a very unusual one. I appreciate the we-said-it-for-all argument to hear from all of you. This court is a court of limited review. We are bound by a record. The record in this case was prepared by a judge. He has sworn to it under 109, and that's what our record is. And I hope that the parties appreciate that we are limited by that report. All right. And, of course, we have other documents in the record. We will take this case under advisory. I understand that. All right. Thank you.